Opinion issued February 5, 2009 









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00278-CR

____________


STEPHEN LOWRY CASTANEDO, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 220th District Court

Bosque County, Texas

Trial Court Cause No. 07-06-14119-BR






MEMORANDUM OPINION

 A jury found appellant, Stephen Lowry Castanedo, guilty of the felony offense
of driving while intoxicated (1) and assessed his punishment at confinement for 10
years. In his sole point of error, appellant contends that the trial court erred in
denying his motion to suppress evidence. 

 We affirm.

Factual and Procedural Background

 In the trial court, appellant moved to suppress evidence of "any oral, written,
or video, or audio recorded statements, acts, or refusals to perform field sobriety tests
either at the scene of the arrest or at the officer's video room." 

 At the trial court's hearing on appellant's motion, Valley Mills Police
Department Officer T. Field testified that on March 24, 2007, he was dispatched to
Highway 6 by the Bosque County Sheriff's Department to investigate a report from
an informant that a car was "weaving all over the road." While driving to Highway
6 in his patrol car, Field received a telephone call, through dispatch, from a second
informant who told Field that he was driving behind a car that was weaving "all over
the road." The second informant's description of the car matched the description of
the car that Field was attempting to locate. Field then drove up to the car of the
second informant, who advised Field that the car right in front of him was "weaving." 
When Field pulled his patrol car behind the car described by the informant, Field saw
the car "bumping the lines" and noticed that it was being driven erratically. Based
on his personal observation and the informants' reports, Field stopped the car. When
he approached the car, Field discovered that appellant was the driver of the car. 
Noticing the smell of alcohol emanating from the car, Field called for a highway
patrolman to administer a field sobriety test. Texas Department of Public Safety
Trooper J. Sparkman arrived and administered a field sobriety test. Based upon
appellant's performance on the field sobriety test, Sparkman took appellant into
custody. Before leaving the scene, Officer Field obtained "names and identifiers for
the other witnesses that saw and observed" appellant's driving.

 On cross-examination, Field conceded that he did not observe appellant cross
over the yellow line into oncoming traffic. However, Field did explain that although
he mostly observed appellant weaving in his lane, he also observed appellant cross
over the shoulder line.

Reasonable Suspicion

 In his sole point of error, appellant argues that the trial court erred in denying
his motion to suppress evidence because "the State offered no evidence of any
violation to justify a traffic stop" and the "officer in question did not express specific
articulable facts to justify a warrantless traffic stop." 

 In reviewing a trial court's ruling on a motion to suppress evidence, we apply
a bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). We give almost total deference to the trial court's determinations on all
fact questions and on application-of-law-to-fact questions (2) that turn on an evaluation
of credibility and demeanor. Johnson v. State, 68 S.W.3d 644, 652 (Tex. Crim. App.
2002). On all other application-of-law-to-fact questions, we apply a de novo standard
of review. Id. at 652-53. We view the record and all reasonable inferences from the
record in the light most favorable to the trial court's ruling and sustain the ruling if
it is reasonably supported by the record and is correct under any theory of law
applicable to the case. Villareal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996). 

 A "stop" by a law enforcement officer "amounts to a sufficient intrusion on an
individual's privacy to implicate the Fourth Amendment's protections." Carmouche,
10 S.W.3d at 328. However, it is well-established that a law enforcement officer may
stop and briefly detain a person suspected of criminal activity on less information
than is constitutionally required for probable cause to arrest. Terry v. Ohio, 392 U.S.
1, 22, 88 S. Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328. In order to stop
or briefly detain an individual, an officer must be able to articulate something more
than an "inchoate and unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27,
88 S. Ct. at 1883. Instead, an officer must have "reasonable suspicion" that an
individual is violating the law. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App.
2005). Reasonable suspicion exists when the officer has some minimal level of
objective justification for making the stop, i.e., when the officer can "point to specific
and articulable facts which, taken together with rational inferences from those facts,
reasonably warrant [the] intrusion." Terry, 392 U.S. at 21, 88 S. Ct. at 1880; see also
Alabama v. White, 496 U.S. 325, 329-30, 110 S. Ct. 2412, 2416 (1990). We
disregard the subjective belief of the officer in our reasonable suspicion analysis and
consider the totality of the circumstances objectively. Ford, 158 S.W.3d at 492-93.

 Reasonable suspicion may arise from the personal observations of a law
enforcement officer or from an informant's tip that has sufficient indicia of reliability. 
Carmouche, 10 S.W.3d at 328 (citing Adams v. Williams, 407 U.S. 143, 146-47, 92
S. Ct. 1921, 1923-24 (1972)). In determining the reliability of an informant's tip,
courts look at two aspects of the tip, the content of the information provided and the
degree of reliability. Alabama, 496 U.S. at 330, 110 S. Ct. at 2416. The strength of
one factor can sufficiently balance the weakness of the other factor to create
reasonable suspicion. Id. For example, if a tip is received from an anonymous
informant, creating a relatively low degree of reliability, "more information will be
required to establish the requisite quantum of suspicion than would be required if the
tip were more reliable." Id. 

 In support of his argument that Officer Field's observations did not create
reasonable suspicion to stop or detain him, appellant relies on three cases: State v.
Huddleston, 164 S.W.3d 711 (Tex. App.--Austin 2005, no pet.); Hernandez v. State,
983 S.W.2d 867 (Tex. App.--Austin 1998, pet. ref'd); and State v. Tarvin, 972
S.W.2d 910 (Tex. App.--Waco 1998, pet. ref'd). In all of these cases, law
enforcement officers initiated traffic stops of individuals based on the officers'
observations that the individuals had crossed into another lane or crossed a fog line
without endangering any other cars. See Huddleston, 164 S.W.3d at 713-14
(reasoning that officer's observation of car drifting "twice to the right side of the
roadway and cross[ing] over the white shoulder stripe, or fog line" did not create
reasonable suspicion); Hernandez, 983 S.W.2d at 868-70 (holding that State did not
show reasonable suspicion based on officer's observation that defendant's car "drifted
slightly across a lane marker a single time"); and Tarvin, 972 S.W.2d at 910-12
(finding no reasonable suspicion for detention when defendant's tires crossed "the
solid white line at the right-hand side of the road on two or three occasions"). Here,
as in these cases, Officer Field stopped appellant after observing him weave within
his own lane and cross over the fog line without endangering any other cars. 
However, in considering the totality of the circumstances, we note that Officer Field
also based his reasonable suspicion on reports from two informants that appellant was
weaving "all over the road." 

 In Hawes v. State, we considered whether a law enforcement officer may rely
on an informant's tip to form reasonable suspicion. 125 S.W.3d 535, 539-40 (Tex.
App.--Houston [1st Dist.] 2002, no pet.). We noted that "[o]ne who presents himself
to an officer while driving a vehicle through which his identity might easily be traced
puts himself in the position to be held accountable for the reliability of the
information." Id. at 539. In Hawes, a tow truck driver reported that a car was driving
erratically, and he provided a license plate number, a description of the car, the car's
location, and its direction of travel. Id. at 537. The tow truck driver also stated that
he was following the car. Id. Based on this information, a police officer located both
vehicles. Id. Although he did not personally witness any traffic violations, the police
officer stopped the driver based on the information provided by the tow truck driver. 
Id. The the tow truck driver did not meet "face to face" with the officer; nevertheless,
we reasoned that by following the driver until the police officer arrived, the tow truck
driver placed "himself in a position where he could be identified [which] increased
the reliability of the information and helped justify the stop." Id. at 539-40. 

 Here, the second informant reported that appellant's car was weaving all over
the road, and he followed appellant's car until Officer Field located the two cars. As
in Hawes, this driver was not identified at the suppression hearing, but he was driving
a "readily traceable vehicle that the officer observed following the suspect." Id. at
539. Therefore, his willingness to place himself in a position where he could be
readily identified increased the reliability of his information and helped to justify the
stop. See id. Additionally, by following appellant's car, this second informant clearly
identified appellant's car to Officer Field. See id. Moreover, the informant's
reliability was increased by the fact that another driver had already reported that
appellant's car had been "weaving all over the road."

 Appellant asserts that the information from the informants amounted to nothing
more than "hearsay testimony regarding unproven and unsubstantiated telephone and
radio calls." However, appellant never objected that these statements were hearsay
or unreliable at the suppression hearing. Appellant further argues that allowing the
trial court's ruling to stand "will give way to the slippery slope of allowing
unwarranted traffic stops based on unproven and potentially unreliable phone calls
while completely ignoring the actual observations of a detaining officer." However,
the fact that the informant placed himself in a position to be readily identified vitiates
appellant's concern. See id. at 539-40. 

 Accordingly, we hold that the trial court did not err in denying appellant's
motion to suppress evidence because the testimony at the suppression hearing
indicated that Officer Field had reasonable suspicion to stop appellant.

 We overrule appellant's sole point of error.

Conclusion

 We affirm the judgment of the trial court.



 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Higley, and Duggan. (3)


Do not publish. Tex. R. App. P. 47.2(b). 





1. See Tex. Penal Code Ann. § 49.04(a) (Vernon 2003), § 49.09(b) (Vernon Supp.
2008). 
2. Also referred to as "mixed questions of law and fact." Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).
3. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of
Texas at Houston, participating by assignment.