# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00523-CR

**Eddie Ray Diaz, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 3 OF BELL COUNTY
### NO. 2C06-03809, HONORABLE GERALD M. BROWN, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

After the trial court denied his motion to suppress evidence obtained during a traffic stop, appellant Eddie Ray Diaz, Jr., pleaded guilty to driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). The agreed sentence was three days in jail and a $1,000 fine. Diaz appeals the trial court's denial of his motion to suppress. We affirm the judgment of the trial court.

At approximately 2:00 a.m. on April 23, 2006, Trooper William J. Sallee observed a vehicle pulling out of a parking lot and driving very slowly. Sallee followed the vehicle and observed it weaving within its lane. When making a right turn, the driver of the vehicle failed to signal. Believing the driver, Diaz, to be intoxicated, Sallee initiated a traffic stop.

Diaz argues that the trial court erred in refusing to suppress evidence obtained pursuant to the stop. According to Diaz, Sallee had neither reasonable suspicion to believe that Diaz was intoxicated nor evidence of a traffic violation.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's findings of fact are given "almost total deference." *Carmouche*, 10 S.W.3d at 327-28; *Guzman*, 955 S.W.2d at 89-90. The trial court's denial of a motion to suppress is reviewed for abuse of discretion, *see Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999), but when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we apply a de novo standard of review, *see Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A detaining officer must have specific articulable facts that, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.*; *Hernandez*, 983 S.W.2d at 869. It is the State's burden to prove that a warrantless detention was lawful. *State v. Huddleston*, 164 S.W.3d 711, 716 (Tex. App.—Austin 2005, no pet.).

The trial court made the following findings of fact:

On April 23, 2006, at approximately 2:00 a.m. Trooper Sallee was working patrol on the northbound frontage road of I-35.

Trooper Sallee saw a 2004 Dodge Neon pull out very slowly from the parking lot of Denim and Diamond [sic], a bar in Bell County, Texas.

2

Another vehicle traveling northbound on the frontage road had to slow down to avoid an accident with the 2004 Dodge Neon.

Trooper Sallee followed the 2004 Dodge Neon north on the frontage road until it reached US 190 and Loop 363. The 2004 Dodge Neon turned right at this intersection and failed to use its turn signal to indicate a right turn.

The frontage road of 1-35 [sic] and US 190 and Loop 363 was a three lane road with the far right lane to be used for right turns only. The center lane was for through traffic and the left lane for left turns and through traffic.

After [sic] 2004 Dodge Neon turned right onto US 190 and Loop 363, Trooper Sallee followed the vehicle east on US 190. Trooper Sallee saw the vehicle weaving within its lane.

Trooper Sallee activated his overhead lights and attempted to perform a traffic stop of the vehicle.

The driver of the 2004 Dodge Neon was the Defendant, Eddie Ray Diaz.

Although Diaz argues that "the record does not support the trial court's findings of fact and conclusions of law," he does not actually dispute these factual findings, and his rendition of the facts is consistent with the trial court's findings. Instead, Diaz argues that:

a fair interpretation of the arresting officer's report, based on his experience at the time of the arrest, shows that he did not have reasonable suspicion to believe that he had an intoxicated driver nor did he have probable cause to believe he had a traffic law violation.

Relying on *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006), Diaz argues that a driver is not required to signal a turn from a designated turn lane and, therefore, Diaz's failure to signal the right turn onto US 190 was not a traffic violation and could not be the basis of a traffic stop. Contrary to Diaz's contention, however, the *Dixon* court did not determine that a turn signal

3

is unnecessary when turning from a dedicated turn lane. Rather, the issue before the court was whether it was within the trial judge's discretion to decide whether to believe the arresting officer's assertion that he initiated the traffic stop for a traffic offense. According to the court, "[b]ecause the trial court did not believe that an offense had occurred, the evidence was obtained as a result of an unlawful stop." The court did not decide, as Dixon asserts, that a driver need not signal when turning from a designated turn lane, and the transportation code includes no exception for dedicated turn lanes:

SIGNALING TURNS; USE OF TURN SIGNALS.

(a)    An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.

(b)    An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

(c)    An operator may not light the signals on only one side of the vehicle on a parked or disabled vehicle or use the signals as a courtesy or "do pass" signal to the operator of another vehicle approaching from the rear.

Tex. Transp. Code Ann. § 545.104 (West 1999). Under the transportation code, Diaz's failure to signal when turning from a designated turn lane was, indeed, a traffic violation. *See id.*

As to reasonable suspicion of intoxication, Diaz cites *Fowler v. State*, 266 S.W.3d 498 (Tex. App.—Fort Worth 2008, pet. ref'd), to support his argument that weaving could not be the basis for the stop if there was no indication that the weaving was unsafe. In *Fowler*, however, the traffic stop was initiated after the officer observed the vehicle cross into an adjacent same-direction lane by a tire's width a single time. *Id.* at 400. There was no other indication of possible

intoxication. *Id.* In reversing the trial court, the appellate court distinguished "those cases where courts have held that a driver's failure to maintain a single lane triggered a reasonable suspicion that the driver" was intoxicated by explaining that, in each of those cases, "the failure to drive in a single lane was coupled with some other factor that indicated danger or a lack of safety, such as the driver's leaving a bar, driving in heavy traffic, crossing into a lane of oncoming traffic, or weaving over an extended distance or time." *Id.* at 503-04.

Here, at 2:00 a.m. on a Sunday morning, Diaz was leaving the parking lot in which a bar was located.[1] Diaz was either driving so slowly that another vehicle had to apply its brakes to avoid a rear collision, or Diaz failed to yield the right-of-way when turning out into traffic. When making a turn, Diaz failed to signal, and he was weaving within his lane. Viewing this evidence in the light most favorable to the trial court's ruling and accepting the trial court's fact findings as true, we hold that the totality of the circumstances gave Sallee a reasonable basis for suspecting that Diaz was driving while intoxicated and to stop him for further investigation. *See Woods*, 956 S.W.2d at 38.

Diaz also suggests that Sallee's inexperience—he "had only been on the street for about eight months at the time of Appellant's arrest"—is relevant in determining whether he had the requisite reasonable suspicion for the traffic stop. However, the "reasonable suspicion" standard is an objective one. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). If an officer has an objective basis for the stop, his subjective intent is irrelevant. *Id.*

---

[1] Diaz notes that an all-night fitness facility was also located in the shopping center.

Having found that, based either on the traffic violation or on reasonable suspicion of intoxication, Sallee had specific articulable facts to justify the traffic stop, we overrule Diaz's point of error. *See Woods*, 956 S.W.2d at 38; *Hernandez*, 983 S.W.2d at 869. Accordingly, we affirm the judgment of the trial court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   July 23, 2009

Do Not Publish